UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| CENGIZ KARAKOC,<br>    Plaintiff,<br>v.<br>ANDREW SAUL,<br>    Defendant. | Case No. 18-cv-06620-RMI<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 27, 29 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying his application for social security disability insurance under Title II of the Social Security Act. On February 17, 2015, Plaintiff filed his application for disability insurance alleging an onset date of April 7, 2011, with a date of last insured of December 31, 2015. *See Administrative Record*[1] ("*AR*") at 33, 104. The ALJ denied the application on July 5, 2017. *Id.* at 27. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council on August 28, 2018, (*id*. at 1-3) and thus, the ALJ's decision became the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 9 & 10), and both parties have moved for summary judgment (dkts. 27 & 29). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

//

---

[1] The *AR*, which is independently paginated, has been filed in several parts as a number of attachments to Docket Entry #15. *See* (dkts. 15-1 through 15-19).

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**SUMMARY OF THE RELEVANT EVIDENCE**

Plaintiff's application for Title II benefits alleged disability due to a multitude of physical and mental limitations. Ultimately, the ALJ found the following conditions were severe: degenerative joint disease, left shoulder; degenerative disc disease; carpal tunnel syndrome, right wrist; degenerative joint disease, elbow; degenerative joint disease of bilateral knees; and obesity. *AR* 17. The ALJ considered other impairments such as kidney stones, bilateral earache, atypical chest pain, hypertension, headaches, dizziness, GERD, tinea pedia, depressive disorder, and anxiety disorder, but found them to fall short of the "severe medically determinable impairment" standard. *AR* 18.

Plaintiff is a Turkish-born naturalized citizen, with a 6th grade education. *AR* 253-54. He became a U.S. citizen on September 11, 2001. *AR* 1215. At the time of the hearing before the ALJ, Plaintiff was 51 years old with a long and varied record of employment history, including jobs as mechanic, diesel mechanic, carpenter, plumber, taxi driver, and others. *AR* 93, 1214. During his time as a mechanic (medium work performed as heavy, *AR* 25), Plaintiff sustained injuries to his back (2003 & 2006), hands and neck (2008), and shoulder (2009). *AR* 231-33. Finally, in 2014,

following a knee injury, Plaintiff received a permanent disability settlement from workers' compensation. *AR* 234-35.

In 2004, Plaintiff suffered a catastrophic loss, the death of his wife. According to his account of the events, his wife suffered a stroke and emergency services were called. *AR* 1215. When the paramedics arrived, they began harassing Plaintiff, using racial epithets, making comments about him being a Muslim and Arab, even though he is Turkish, and stated that Plaintiff's wife "must be a drug addict." *Id*. Eventually the paramedics took Plaintiff's wife to the hospital, but due to how long it took to get her there, and due to some equipment malfunctions, Plaintiff's wife suffered irreversible brain damage and died shortly thereafter. *Id*. This event led to Plaintiff suffering extreme depression and panic attacks and would serve as the basis for a diagnosis of PTSD. *See id.* at 1214.

Following a mental health referral in 2015, within the relevant time period, Plaintiff began seeking treatment from Claudette de Carbonel, Ph.D, MFT. *AR* 1209. Dr. de Carbonel initially diagnosed Plaintiff with PTSD, major depression, and "(many) stress injuries," and set out a course of treatment whereby she would provide Plaintiff with weekly therapy from 2016 through 2017. *Id*. During Plaintiff's treatment, Dr. de Carbonel continually monitored and adjusted Plaintiff's medications, and noted his mental health symptoms and limitations, finding that Plaintiff suffered chronic depression (*id*. at 1153, 1212) based on the death of his wife as well as having to send his autistic son to live in Turkey to get needed care, several severe psychological stressors (*id*. at 1157), severe anxiety (*id*. at 1159, 1212), and exhibited extreme functional limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation (*id*. 1210-12).

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or

more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[2] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)) and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. *AR* 15-27. At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *AR* 17.

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: degenerative joint disease, left shoulder; degenerative disc disease; carpel tunnel syndrome, right wrist; degenerative joint disease, elbow; degenerative joint disease of bilateral knees; and obesity. *AR* 17.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed, and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an

---

[2] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will generally cite to the SSI regulations herein unless noted otherwise.

4

impairment or combination of impairments that met or medically equaled one of the listed impairments. *AR* 19. Next, the ALJ determined that Plaintiff retained the RFC "to perform light work" with several exertional, postural, and environmental limitations. *Id*. at 20.

At Step Four, the ALJ determined that Plaintiff was unable to perform any past relevant work. *Id*. at 25. Lastly, at Step Five, the ALJ concluded that based on the RFC, there were jobs in the national economy that Plaintiff could have performed during the relevant time period, such as a maker II, garment sorter, and ticketer. *Id*. at 26. Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time from April 7, 2011, through the date last insured. *Id* at 27.

## ISSUESS PRESENTED

Plaintiff presents three issues for review claiming that the ALJ erred; in determining that Plaintiff's depressive disorder and anxiety disorder were non-severe; in failing to consider the combination of Plaintiff's impairments severe and non-severe when determining the RFC; and in finding Plaintiff not credible. Pl.'s Mot. (dkt. 27-1) at 12.

## DISCUSSION

At Step Two, the ALJ found that Plaintiff's "medically determinable mental impairments of depressive disorder and anxiety disorder, considered singly and in combination, did not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and were therefore nonsevere." *AR* 18. In arriving at that determination, the ALJ rejected the opinion of treating doctor Claudette de Carbonel, Ph.D, MFT, and instead, relied on consultative examiner R. Ryan Gunton, Ph.D. and two State Agency reviewing psychological consultants. Plaintiff assigns error to the ALJ's rejection of Dr. de Carbonel's opinion and, in addition, argues that the ALJ ignored the evidence of mental health management by Plaintiff's other treating physician, Dr. Kulthia. Much of Plaintiff's arguments are based on the timing of the opinions by the non-examining physicians and the consultative examiner as compared to the treatments and opinions by the treating physicians. That is, the opinions relied upon by the ALJ pre-date the treatment and opinions of Plaintiff's treating physicians. Defendant's response is to admit the lack of a longitudinal record review by the non-examining physicians and the consultative examiner, but to

argue that their opinions are supported by the record, as was the ALJ's rejection of Dr. de Carbonel. Defendant does not address Plaintiff's arguments regarding the evidence submitted by Dr. Kulthia in support of his claims for depression and anxiety.

As mentioned above, at Step Two of the disability determination process, it is incumbent on the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments. Step Two, is "a de minimis screening device [used] to dispose of groundless claims." *Webb*, 433 F.3d at 687. In this case, there was significant evidence presented by Plaintiff regarding his depressive disorder and anxiety disorder from late 2015 through 2017. Dr. Gunton examined Plaintiff in June of 2015, prior to Plaintiff's referral to mental health, and noted Plaintiff's use of Lorazepam and opined that Plaintiff's mental health symptoms may be chronic in nature and that his mental health condition may not abate on its own. *AR* 757-59. The non-examining State Agency physicians made their determinations in June (Dr. Goosby, *AR* 111-12) and October (Dr. Westby *AR* 125) of 2015. Plaintiff's referral to Dr. de Carbonel was not until November of 2015. *AR* 1153. Thus, Dr. Gunton did not have access to Plaintiff's mental health treatment records from Dr. de Carbonel, or Dr. Kulthia's treatment notes when he rendered his opinion. Likewise, Dr. Goosby only considered Dr. Gunton's examination and used it as a basis for his findings. Similarly, Dr. Westby merely reviewed Dr. Goosby's findings and added that there was "no worsening of psych, no new allegations, no new limitations, no new mh treatment." *Id*. at 125. The report merely points to records from 2011, 2014, and Dr. Gunton's examination in 2015. *Id*. Again, nothing in these opinions take Dr. de Carbonel, or Dr. Kulthia's, treatments or records into consideration, nor could they.

As outlined above, Dr. de Carbonel saw Plaintiff weekly from 2016 to 2017, prescribing medicines, changing the dosages, and providing therapy. *Id*. 1213-18. That treatment was consistent with the notes and treatment by Plaintiff's other treating physicians, including; Dr. Goodwine, who in 2015 prescribed Ativan for Plaintiff's anxiety and gave him a referral to mental health (*id.* 1129-1133); Dr. Poon, who in June of 2015, twice noted Plaintiff's anxiety (*id.* 779); Dr. Garrick, who in February of 2016, noted Plaintiff's history of depression and anxiety (*id.* 1100, 1103); and Dr. Kulthia, who in 2016, prescribed Paxil, then Zoloft, and then made changes

to Plaintiff's other medications to address of his complaints of anxiety and depression (*id.* 1180-82).

It was unreasonable then for the ALJ to reject the opinion of the treating physician, one who provided weekly treatment for anxiety and depression, in favor of the opinions by the non-examining physicians and the consultative examiner, which pre-dated the treating physician relationship and the opinions and records therefrom. This is especially true where the opinions of the non-examining physicians must *necessarily* rely on the medical evidence of record. At the very least, the ALJ should have ordered a later State Agency review of Plaintiff's treatment records if the ALJ had questions regarding the treating physicians' opinions. The ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence, particularly evidence from treating physicians, are addressed so that the disability determination is fairly made on a sufficient record of information, be it favorable or unfavorable to the claimant. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999); and, *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978); *see also* 42 U.S.C. § 421(h). Furthermore, the ALJ erred in failing to discuss Dr. Kulthia's treatment of Plaintiff's anxiety. Those records are contemporaneous with, and supportive of, Dr. de Carbonel's treatment and opinions. The ALJ's failure to address that evidence of Plaintiff's limitations at Step Two falls short of the ALJ's obligation to state reasons for disregarding "significant probative evidence." *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995).

Because the case is to be remanded for further proceedings for the reasons described above, the court declines to address Plaintiff's remaining claims at this time since the calculus of the disability determination may change radically once the above-described error at Step Two is corrected. *See High v. Berryhill,* No. 18-CV-00221-DKW-RT, 2019 WL 1921610, at *5 (D. Haw. Apr. 30, 2019) (citing *Richard v. Colvin*, No. C13-6055 RBL, 2015 WL 2085610, at *1 (W.D. Wash. May 5, 2015); *see also Haverlock v. Colvin*, No. 2:12-CV-2393-DAD, 2014 WL 670202, at *5 (E.D. Cal. Feb. 20, 2014) ("In light of the remand required by the ALJ's error at Step Two, the court need not address plaintiff's remaining claims.").

//

//

**CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Summary Judgment (dkt. 27) is **GRANTED**, and Defendant's Motion for Summary Judgment (dkt. 29) is **DENIED**. The case is **REMANDED** for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: March 11, 2020

ROBERT M. ILLMAN
United States Magistrate Judge